IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

JULIO JOSE HIGUERA,                    :
                                       :
                                       :
                                       :
        Petitioner,                    :
                                       :
v.                                     :        CIVIL ACTION NO.
                                       :        1:23-cv-05026-LMM
                                       :
ROSMARY DEL CARMEN ABREU               :
JIMENEZ,                               :
                                       :
                                       :
        Respondent.                    :

**ORDER**

This matter comes before the Court on Petitioner's Verified Petition for

Return of Child to Venezuela ("Verified Petition") [1]. Petitioner brings this civil

action pursuant to the Convention on the Civil Aspects of International Child

Abduction (the "Hague Convention") and the International Child Abduction

Remedies Act of 1988 ("ICARA"), 22 U.S.C. §§ 9001-- 9011. Petitioner, a citizen

and resident of Venezuela, seeks the return of his 7-year-old minor daughter,

M.A.H.A. Having reviewed the record, the Court finds that Petitioner has met his

burden of demonstrating the need for Respondent to immediately return

M.A.H.A. to Petitioner so that he can return the child to Venezuela. A Venezuelan

court can then evaluate the custody disputes between the parties.

## I.     BACKGROUND

M.A.H.A. was born to Petitioner and Respondent on November 30, 2015,[1] in the Country of Venezuela, where Petitioner and Respondent were married and later divorced. Dkt. No. [1] ¶¶ 7–9. Petitioner and Respondent both resided in Venezuela at the time of M.A.H.A.'s birth. Id. ¶ 7. Petitioner remains a citizen and current resident of Venezuela, while Respondent has resided in the United States since 2018. Id. ¶¶ 6, 10. At the time Respondent moved to the United States, Respondent ceded temporary sole custody of the ex-couple's seven-year-old daughter M.A.H.A. to Petitioner. Id. ¶ 10. M.A.H.A. is a citizen of Venezuela, has lived in Venezuela since birth, and has attended school in Venezuela. Id. ¶¶ 9, 11–12.

On August 15, 2023, Petitioner took M.A.H.A. on a flight to visit Respondent, M.A.H.A.'s mother, in the United States. Id. ¶ 16. Petitioner and Respondent had planned the visit to last only a few weeks and for Petitioner to pick up M.A.H.A. on September 10, 2023 for M.A.H.A.'s return to Venezuela. Id. ¶¶ 14, 18. To make the visit possible, Petitioner requested and received authorization from the Venezuelan government to travel to the United States with M.A.H.A. on August 13, 2023. Id. ¶ 17; Dkt. No. [2-5] at 2–4. The travel

---

[1] Although the Venezuelan court documents indicate Petitioner is M.A.H.A.'s father, Dkt. No. [2-5] at 6, it appears that Respondent now disputes this fact. Dkt. No. [9] at 3.

authorization required Respondent to return to Venezuela with M.A.H.A. on September 12, 2023.[2] Id. at 4.

However, when Petitioner returned to the United States on September 10 to retrieve M.A.H.A., he received a phone call from Respondent. Dkt. No. [1] ¶¶ 19–20. Respondent told Petitioner that she would not be returning M.A.H.A. to Petitioner, claiming that Petitioner psychologically abused M.A.H.A. Id. ¶¶ 20–21. Respondent threatened to contact the police if Petitioner attempted to regain custody of M.A.H.A. Id. ¶ 22.

Petitioner asked the Court for emergency injunctive relief, Dkt. No. [2], which the Court granted in part. Dkt. No. [3]. Petitioner now seeks to regain custody of M.A.H.A. and to return her to Venezuela pursuant to the Hague Convention and ICARA. Dkt. No. [1]. The Court held an evidentiary hearing in this matter on October 15, 2023, and now rules on the merits of Petitioner's action.

## II.   LEGAL STANDARD

### A. The Hague Convention & ICARA

The Hague Convention was adopted in 1980 and sought to address the problem of international child abductions stemming from domestic disputes. Abbott v. Abbott, 560 U.S. 1, 8 (2010); Baran v. Beaty, 526 F.3d 1340, 1344

---

[2] It appears that Petitioner complied with all the terms of this order other than the date of return. The Court notes that all evidence indicates that Petitioner would have returned the child on the appropriate date absent Respondent's actions.

(11th Cir. 2008). The United States has implemented the terms of the Convention through the ICARA. 22 U.S.C. §§ 9001--9011. "The Convention seeks to protect children internationally from the harmful effects of their wrongful removal or retention and to establish procedures to ensure their prompt return to the State of their habitual residence, as well as to secure protection for rights of access." Gomez v. Fuenmayor, 812 F.3d 1005, 1010 (11th Cir. 2016) (citation and internal quotation marks omitted).[3]

"Children who are wrongfully removed [or retained] under the provisions of the Convention shall be promptly returned unless one of the exceptions provided in the treaty applies." Galli v. Marques, No. 6:21-cv-358, 2021 WL 2829018, at *1 (M.D. Fla. Mar. 5, 2021) (citing 22 U.S.C. § 9001(a)(4)). "The Convention does not provide for a determination of custody rights or the merits of a custody dispute; [rather,] its underlying premise is that the children's country of habitual residence is the proper forum with jurisdiction to issue custody orders." Id. (quoting Leslie v. Noble, 377 F. Supp. 2d 1232, 1238 (S.D. Fla. 2005)) (internal quotation marks omitted).  In other words, in adjudicating a verified petition alleging wrongful removal or retention, a court does not resolve disputes or questions of custody and is limited to determining rights

---

[3] For purposes of the Convention, "habitual residence" is defined as "the place where [the child] has been physically present for an amount of time sufficient for the acclimatization and which has a 'degree of settled purpose' from the child's perspective." Pesin v. Rodriguez, 77 F. Supp. 2d 1277, 1284 (S.D. Fla. 1999) (citations omitted).

under the Convention, i.e., whether the child was wrongfully removed or retained. See 22 U.S.C. § 9001(b)(4); and see Gomez, 812 F.3d at 1011 ("The central feature of the Convention is the return remedy by which a wrongfully [retained] child is to be repatriated to her home country for custody determinations." (citing Abbott, 560 U.S. at 9)). Thus, "[w]hen a child has been wrongfully removed from his country of habitual residence, the Convention provides the non-abducting parent with a remedy of return, intended to restore the parties to the pre-abduction status quo and deter parents from crossing borders in search of a more sympathetic forum for child custody proceedings." Gomez, 812 F.3d at 1011 (quoting Baran, 526 F.3d at 1344).

A petitioner seeking the return of a child bears the burden of proving wrongful removal or retention by a preponderance of the evidence. 22 U.S.C. § 9003(e)(1). Under the Hague Convention, the removal or retention of a child is wrongful when:

> (a)   it is in breach of rights of custody attributed to a person, an institution or any other body, either jointly or alone, under the law of the State in which the child was habitually resident immediately before the removal or retention; and
> (b)   at the time of removal or retention those rights were actually exercised, either jointly or alone, or would have been so exercised but for the removal or retention.

Mendoza v. Salado, 2021 WL 3508690, at *2 (N.D. Ga. May 3, 2021) (citing Hague Convention, Article 3). "If the petitioner meets this burden, then the respondent opposing the child's return bears the burden of establishing the applicability of one of the exceptions or affirmative defenses provided in

Articles 12, 13, or 20 of the Hague Convention." Id. (citing 22 U.S.C. § 9003(e)(2)). "If the respondent is unsuccessful in raising one of these defenses, the court must order the return of the wrongfully removed or retained child. The defenses, however, are to be narrowly construed and, even if proven, do not automatically preclude an order of return." Id. (citing Baran, 526 F.3d at 1345).

## III.   DISCUSSION

### A. Wrongful Removal

Under ICARA, Petitioner must establish by a preponderance of the evidence that M.A.H.A. has been "wrongfully removed or retained within the meaning of the Convention." 22 U.S.C. § 9003(e)(1)(A). To establish a *prima facie* case of wrongful removal or retention under the Convention, Petitioner must show that (1) the habitual residence of M.A.H.A. at the time of the removal or retention was Venezuela; (2) the removal or retention breached the Petitioner's custody rights under Venezuelan law; and (3) Petitioner was exercising custody rights immediately prior to the removal or retention.[4] See Hague Convention, art. 3; Berenguela-Alvarado v. Castanos, 950 F.3d

---

[4] Both the United States and Venezuela are signatories to the Hague Convention. Dkt. No. [1] ¶ 3. And see U.S. Dep't. of State, Bureau of Consular Affairs, U.S. Hague Convention Treaty Partners, https://travel.state.gov/content/travel/en/International-Parental-Child-Abduction/abductions/hague-abduction-country-list.html (last visited November 1, 2023).

1352, 1358 (11th Cir. 2020); <u>Chafin v. Chafin</u>, 742 F.3d 934, 938 (11th Cir. 2013); <u>Lops v. Lops</u>, 140 F.3d 927, 935–36 (11th Cir. 1998). The Court finds that Petitioner has established a *prima facie* case of wrongful removal under the Hague Convention and addresses each element below.

### 1. Habitual Residence

First, the Court finds that M.A.H.A.'s habitual residence was Venezuela at the time of her retention. Respondent admits that M.A.H.A. has lived in Venezuela her entire life, that M.A.H.A. attends school there, and that M.A.H.A. is a Venezuelan citizen. Dkt. No. [9] ¶ 3; Dkt. No. [1] ¶¶ 11–12. "Where a child has lived in one place with her family indefinitely, that place is likely to be her habitual residence." <u>Monasky v. Taglieri</u>, 589 U.S. ___, 140 S. Ct. 719, 727 (2020). Here, it is beyond dispute that, after living with her father for almost five years and spending her entire life in Venezuela, M.A.H.A. is integrated into a social and family environment in Venezuela. Thus, her habitual residence is Venezuela.[5]

### 2. Breach of Custody Rights

Second, the Court finds that Respondent's retention of M.A.H.A. breaches Petitioner's custody rights under Venezuelan law. Respondent admits that, following her immigration to the United States in 2018, Respondent granted Petitioner temporary sole custody of M.A.H.A. Dkt. No. [9] ¶ 3; Dkt. No.

---

[5] Respondent does not dispute this finding. Dkt. No. [9].

[1] ¶ 10. Respondent also admits that M.A.H.A.'s authorization to travel to the United States was granted for a temporary period of a few weeks. Dkt. No. [9] ¶ 5; Dkt. No. [1] ¶¶ 15–19. Thus, Respondent effectively concedes that Petitioner has had custodial rights over M.A.H.A. since 2018, and that the Venezuelan court's order authorizing M.A.H.A.'s travel contemplated that M.A.H.A. would return to Venezuela with Petitioner. On their own, Respondent's admissions satisfy Petitioner's burden of establishing that he has custodial rights over M.A.H.A.

However, Respondent contends that the Venezuelan courts authorized Respondent to terminate the *entirety* of Petitioner's custodial rights "at her sole discretion" and without the necessity of any court order or action. Dkt. No. [9] ¶ 9. This is contrary to the plain language of the orders from the Venezuelan courts.

Petitioner obtained a highly specific authorization to remove M.A.H.A. from Venezuela to the United States for the limited purpose of visiting Respondent for a few weeks. Dkt. No. [2-5] at 2–4.[6] Nothing in this travel order contemplates Respondent assuming custody in the manner she alleges.

---

[6] Petitioner also purchased airline tickets for September 10, 2023, so that Petitioner could pick up M.A.H.A. at the end of her planned visit with Respondent. Dkt. No. [2-5] at 15. This demonstrates that Petitioner expected to return M.A.H.A. to Venezuela at the end of her visit to the United States.

In fact, the order explicitly states that Petitioner could be in violation of the order if he fails to return his daughter to Venezuela on the date ordered.[7]

Respondent also argues that Subsection Four of a Venezuelan court order grants Respondent authority to rescind Petitioner's custody "without the intervention of any Court." Dkt. No. [13] at 2. However, the Court finds no textual support for this proposition in Subsection Four of the relevant court order and Respondent's counsel could offer none at the hearing.[8] Although Subsection Four references an assignment of "provisional" custody to Respondent for the purpose of establishing her "definitive migratory status in the United States of America," the provision never mentions Respondent's discretion to unilaterally assume custody of M.A.H.A. or to completely terminate Petitioner's custody rights.[9] Dkt. No. [2-5] at 8. Instead, another clause in the order provides that Petitioner must, at a minimum, give sixty days' notice to Petitioner before bringing M.A.H.A. to the United States for the

---

[7] If Respondent was properly exercising her custody rights, it is unclear why she waited until Petitioner returned to the United States to pick up M.A.H.A. to inform him that she was not going to allow M.A.H.A. to return to Venezuela. Respondent also allegedly told Petitioner her decision was because of his mistreatment of M.A.H.A.—not because she was assuming custody. Dkt. No. [1] ¶ 21. Respondent denies this allegation. Dkt. No. [9] ¶ 6.

[8] At the hearing, both parties agreed that this order, Dkt. No. [2-5] at 5–11, was the most accurate statement of the parties' custodial rights under Venezuelan law.

[9] Indeed, the provision suggests that judicial intervention is required, noting that events affecting the custody rights of the parties will have effect only "once such event is accredited." Dkt. No. [2-5] at 8.

purpose of "regularizing" M.A.H.A.'s immigration status. Id. at 9–10. Thus, even if Respondent has authority to assume custody of M.A.H.A. for the limited purpose of establishing M.A.H.A.'s immigration status in the United States, Respondent has not done so lawfully, since she informed Petitioner on September 10 of her intent to immediately take custody of M.A.H.A. and did not provide the required 60-day notice. This 60-day notice requirement is important because it would have provided Petitioner the ability to request relief from a Venezuelan court if he opposed this action or Respondent's interpretation of the custody order. Respondent's actions here have not provided him that opportunity. At the hearing, Respondent's counsel could offer no explanation as to how this text could be reconciled with his position of full and complete custody exercised at Respondent's sole discretion.

Additionally, Respondent ignores Subsection Three of the Venezuelan court's order. This provision explicitly states that both parents have "patrea potestad" rights and responsibilities over M.A.H.A., including rights provided by articles 358 and 359 of Venezuela's Ley Orgánica para la Proteccion de Niños, Niñas y Adolescentes (LOPNNA). Dkt. No. [2-5] at 8. Article 359 of LOPNNA provides that the mother and father of a child must decide, by mutual agreement, about the place of residence for the child. Art. 359, Ley Orgánica para la Proteccion de Niños, Niñas y Adolescentes, https://www.oas.org/juridico/PDFs/mesicic4_ven_ley_org_prot_ninos_adol

c.pdf.[10] This provision provides that the "father and mother will decide by mutual agreement about the place of residence or habitation" of the child. If the parties are unable to reach an agreement, the cited provision indicates that they may appear before a Venezuelan court for relief. As this provision is explicitly incorporated into the custody order, it gives Petitioner rights inconsistent with Respondent's position.

The Supreme Court has held that the joint right to decide a child's country of residence—otherwise known as a *ne exeat* right—is a custody right under the Hague Convention. Abbott v. Abbott, 560 U.S. 1, 22 (2010). Thus, even if Respondent has some authority to assume *physical* custody over M.A.H.A. under Venezuelan law, Petitioner's *ne exeat* right to decide the place of M.A.H.A.'s residence is still protected by the Hague Convention and has been breached by Respondent's retention of M.A.H.A.

Respondent argued at the hearing that errors in translation of the custody order necessitated a different result. The Court then admitted into evidence an alternative translation the Respondent provided. The Respondent's translation provides the same clear text as is discussed above. Additionally, Respondent attempted to proffer expert testimony from a Venezuelan lawyer to provide the Court with testimony about why the custody order operated contrary to the

_____

[10] The Court obtained a translation of this provision by having the Court's interpreter translate this language. Neither party objected to the translation. The translation was attached as an exhibit to the hearing.

text of the order. As discussed below, the Court declined to consider such testimony in the absence of any ambiguity as to these custody issues as outlined in the custody order.

To the extent Respondent has any rights to alter the custody arrangement, she must exercise them in the appropriate forum: a Venezuelan court.[11] Thus, because Respondent has admitted that she granted custody rights to Petitioner in 2018 and points to no persuasive authority for her purported ability to revoke those rights, Petitioner has established that Respondent's retention of M.A.H.A. violates his custody rights.

### 3. Exercise of Custody Rights

Third, the Court finds that Petitioner exercised his custody rights over M.A.H.A. immediately prior to Respondent's retention of M.A.H.A.[12] Respondent admits that M.A.H.A.'s authorization to travel to the United States was temporary and that M.A.H.A. was scheduled to return to Venezuela on September 10, 2023. Dkt. No. [9] ¶ 5; Dkt. No. [1] ¶¶ 15–19. Although Respondent disputes that the parties intended for M.A.H.A. to be raised in Venezuela and instead contends that M.A.H.A. was eventually expected to live with Respondent, Dkt. No. [9] ¶ 4, Respondent admits that M.A.H.A.'s instant visit with Respondent in the United States was planned to last only a few

---

[11] Respondent neither produces any Venezuelan court documents nor alleges that a Venezuelan court has already revoked Petitioner's custody rights. Dkt. No. [9].

[12] At the hearing, Respondent stated that she does not dispute this finding.

weeks. When Respondent refused to allow M.A.H.A to return to Venezuela with him, he immediately filed this Petition. Dkt. No. [1]. Thus, Petitioner did not relinquish or abandon his custody rights by taking M.A.H.A. to visit Respondent. To the contrary, Petitioner has consistently asserted his custodial rights over M.A.H.A. both before and since September 10, 2023.

For these reasons, Petitioner has established, by a preponderance of the evidence, that Respondent wrongfully retained M.A.H.A. on September 10, 2023, in violation of Article 3 of the Hague Convention. "Children who are wrongfully removed or retained within the meaning of the Convention are to be promptly returned unless one of the narrow exceptions set forth in the Convention applies." 22 U.S.C. § 9001(a)(4). See also Hague Convention, art. 12. Thus, the Court now considers whether an exception applies.

## B. Article 13b Defense

Article 13b provides that the Court "is not bound to order the return of the child" if the person opposing the child's return establishes that "there is a grave risk that his or her return would expose the child to physical or psychological harm or otherwise place the child in an intolerable situation." Hague Convention, art. 13. Pursuant to ICARA, Respondent has the burden of establishing that the Article 13b exception applies by clear and convincing evidence. 22 U.S.C. § 9003(e)(2)(A). Respondent asserts that the exception set forth in Article 13b of the Hague Convention applies because returning

M.A.H.A. to Venezuela would put her at a grave risk of physical or psychological harm or otherwise put M.A.H.A. in an intolerable situation. Dkt. No. [9] ¶ 10.

In support of her defense, Respondent proffered that: (1) Petitioner's live-in girlfriend encourages M.A.H.A. to hit her siblings; (2) Petitioner's live-in girlfriend encourages M.A.H.A. to wipe feces on Respondent's furniture; and (3) M.A.H.A. sometimes shares a bed with the eleven-year-old son of Petitioner's live-in girlfriend.[13] Id. The first two of these allegations are insufficient as a matter of law to establish a 13b defense. The Eleventh Circuit has noted that "the proper inquiry" for evaluating a 13b defense "focuses on the risk faced by the child, not the parent." Gomez, 812 F.3d at 1010. Even if Respondent has proved these first two allegations by clear and convincing evidence, neither allegation establishes that M.A.H.A.'s return to Venezuela would put *M.A.H.A.* in physical or psychological danger. At best, these facts would establish that M.A.H.A. could harm or disrupt others by hitting her siblings or soiling furniture. Thus, because Respondent's first two allegations are irrelevant to whether M.A.H.A. faces a grave risk of danger in Venezuela, the Court need not address such allegations.

However, Respondent's third allegation is more serious. If proven, sexual abuse of a child is clearly an intolerable situation excusing return of the child to

---

[13] Petitioner strenuously disputes these allegations. It is unnecessary for the Court to determine whether they are in fact true. With the facts taken in the light most favorable to Respondent, she is still unable to meet her burden.

her habitual residence. See Baran, 562 F.3d at 1348 (citing Hague Int'l Child Abduction Convention: Text and Legal Analysis, 51 Fed. Reg. at 10510). However, Respondent does not go as far as alleging sexual abuse.[14] Instead, Respondent's allegation, if true, establishes only that M.A.H.A. has been sleeping in the same bed as another child close to her own age. Although this sleeping arrangement is arguably inappropriate for a seven-year-old girl, there has been no allegation of M.A.H.A. being harmed in any way from this other child.[15] Thus, any risk of harm that M.A.H.A. faces from her sleeping in the same bed as an eleven-year-old boy—without accompanying evidence or allegation of inappropriate conduct—does not rise to the level of a "grave risk" contemplated by the Hague Convention's narrow 13b exception or Eleventh Circuit case law interpreting this exception. See Baran, 526 F.3d at 1341–44

---

[14] At the hearing, Respondent conceded that she had no evidence that the eleven-year-old boy harmed M.A.H.A. in any way.

[15] Article 13b of the Hague Convention "is not a license for a court in the abducted-to country to speculate on where the child would be happiest. That decision is a custody matter, and reserved to the court in the country of habitual residence." Friedrich v. Friedrich, 78 F.3d 1060, 1068 (6th Cir. 1996). The United States Department of State has issued official comments regarding the Hague Convention, explaining that Article 13b "was not intended to be used by defendants as a vehicle to litigate (or relitigate) the child's best interests." Hague Int'l Child Abduction Convention; Text and Legal Analysis, Public Notice 957, 51 Fed. Reg. 10,494–01, 10,510 (Mar. 26, 1986). The State Department specifically addressed the use of "intolerable situation" explaining that its "review of the deliberations on the Convention reveals that 'intolerable situation' was not intended to encompass return to a home where money is in short supply, or where educational or other opportunities are more limited than in the requested State." Id.

(finding a grave risk of harm to respondent's infant son where petitioner habitually drank alcohol, verbally and physically abused respondent, and once fell into a table while balancing his son on one hand); Gomez, 812 F.3d at 1008–10 (holding that a grave risk of harm existed for respondent's four-year-old daughter where petitioner repeatedly threatened to kill respondent, solicited another person to shoot at respondent's car, and planted drugs in respondent's car to get her arrested). Accordingly, the Court finds that Respondent has not demonstrated by clear and convincing evidence that returning M.A.H.A. to Venezuela will place her in an intolerable situation or create a grave risk of harm to her.

### C. Gwinnett County Legitimation Action

Third, Respondent asks the Court to return M.A.H.A. because Petitioner is not M.A.H.A.'s biological father and the actual biological father has filed a legitimation and custody action in Gwinnett County Superior Court. Dkt. No. [9]. Respondent claims that this action gives the superior court an "interest in the whereabouts of the child" and that M.A.H.A.'s return to Venezuela could frustrate the superior court proceedings. Id. However, Respondent cites no authority for the proposition that this state-court action may excuse this Court's obligations to return M.A.H.A. to Venezuela. Id. And no exception to the Hague Convention encompasses the type of defense asserted by Respondent. See Mendez Lynch v. Mendez Lynch, 220 F. Supp. 2d 1347, 1357–58 (M.D. Fla. 2002) (summarizing six exceptions to the Hague

Convention's general rule that a wrongfully retained child must be returned to their habitual residence). Thus, the existence of a Gwinnett County Superior Court legitimation action involving M.A.H.A. has no bearing on Petitioner's Hague Convention action.[16]

### D. Motions for Expert Testimony

Prior to the evidentiary hearing on November 15, 2023, both parties moved to admit expert witnesses to testify on Venezuelan custody law. Dkt. Nos. [13, 14, 15]. The expert witnesses referenced in these motions are Venezuelan lawyers who practice family law and who would arguably opine as to the custody rights of the parties in Venezuela. Neither party cited any authority for the admission of such testimony. Id. However, the Court assumes that Petitioner and Respondent sought admission under Federal Rule of Civil Procedure 44.1, which provides that, when "determining foreign law," the Court "may consider any relevant material or source, including testimony, whether or not submitted by a party or admissible under the Federal Rules of Evidence." Fed. R. Civ. P. 44.1. However, the rule provides that courts *may* consider such testimony, not that they *must* do so. See Bodum USA, Inc. v. La Cafetiere, Inc., 621 F.3d 624, 628 (7th Cir. 2010). Thus, the Court has

---

[16] In addition, the documents provided to the Court from the Venezuelan custody actions unequivocally establish that Petitioner is the child's father. Dkt. No. [2-5] at 6.

discretion on whether to consider the expert testimony offered by Petitioner and Respondent.

At the hearing, Respondent stated that her witness would testify that Subsection Four of the Venezuelan court's order authorizes Respondent to assume full custody over M.A.H.A. at her sole discretion. Petitioner stated that his witnesses would rebut this assertion. However, the Court determined that the plain text of Subsection Four undermined Respondent's position and that other provisions in the order—including the sixty-day notice provision as well as Subsection Three—established a breach of Petitioner's custody rights. When the Court's questioned Respondent at the hearing about this issue, Respondent responded that the lawyer-expert would essentially testify that the Venezuelan court order does not mean what it says. The Court therefore found that neither party's expert testimony would be helpful to assist the Court in determining a question of foreign law because the Court already had the clear language of the custody orders. Accordingly, the Court denies both Petitioner and Respondent's Motions to Admit Expert Testimony. Dkt. Nos. [13, 14, 15].

## IV.   CONCLUSION

In sum, Petitioner has met his burden of establishing a *prima facie* case of wrongful removal. Respondent has failed to meet her burden of establishing a defense under the Hague Convention. Therefore, Petitioner's petition is granted and the Court orders M.A.H.A.'s return to Venezuela.

The Court's role in this matter is limited to only determining whether M.A.H.A. was wrongfully retained by Respondent and, if so, whether Respondent has successfully presented evidence to support one of the affirmative defenses to a petition under ICARA and the Hague Convention. This Court has no legal authority over questions regarding custody or the best interests of the children—such questions are a matter for the country of M.A.H.A.'s habitual residence: Venezuela.

Based on the foregoing, this Court finds that the preponderance of the evidence establishes that M.A.H.A. was wrongfully retained and that no exception applies to excuse the return of M.A.H.A. to her habitual residence of Venezuela.

Accordingly, **IT IS HEREBY ORDERED THAT:**

1. The Petition of Julio Jose Higuera pursuant to the Hague Convention on the Civil Aspects of Child Abduction and the International Child Abduction Remedies Act for the return of his minor child M.A.H.A. [1] is hereby **GRANTED.**

2. The minor child M.A.H.A. shall be returned to Petitioner **no later than 5:00 pm on Thursday, November 16, 2023.** Counsel are **ORDERED** to confer as to the details of the transfer. This should be done in the least disruptive fashion possible to M.A.H.A.

3. If Respondent fails to cooperate, the Court will order the U.S. Marshals to

effectuate the transfer.

4. Respondent shall not remove M.A.H.A., or cause M.A.H.A. to be removed, from this District until M.A.H.A.'s return to Petitioner is effectuated.

5. Respondent shall surrender to Petitioner all travel documents belonging to M.A.H.A., including, but not limited to any passport, travel visas, and/or social security card. If Respondent is not in possession of such documents, Respondent shall fully cooperate with Petitioner to obtain any travel documents necessary for M.A.H.A. to return to Venezuela.

6. Once M.A.H.A. returns to Venezuela, the parties' rights shall be governed by Venezuelan law.

7. Consistent with this Court's Local Rule 54.2, Petitioner shall, within 30 days, submit an application for reasonable fees and costs recoverable under 22 U.S.C. § 9007(b) of ICARA. Respondent shall have an opportunity to respond and will have the burden of establishing why an order requiring Respondent to pay such fees and costs would be "clearly inappropriate" under § 9007(b)(3) and can address whether the requested amounts are reasonable.

**IT IS SO ORDERED** this 15th day of November, 2023.

**Leigh Martin May**
**United States District Judge**